**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER AIRGOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 14-1249 |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| THE TOWNSHIP OF PINE, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I.     MEMORANDUM

For the reasons stated below, the Motion to Partially Dismiss Amended Complaint filed

by Defendants Township of Pine and Clyde Moore (Doc. 33) will be GRANTED in part and

DENIED in part, and the Motion of Defendants Worthington Borough and Kevin Feeney to

Partially Dismiss Plaintiff's Amended Complaint and Motion to Strike Portions of Amended

Complaint (Doc. 35) will be GRANTED in part and DENIED in part.

## BACKGROUND

In or around September of 2012, Plaintiff Christopher Airgood ("Plaintiff") was hired by

the Pine Township Board of Supervisors ("Board of Supervisors") as a member of the

Township's Police Department.  (Amended Compl. (Doc. 32)  ¶ 11).  He was promoted to the

position of Chief of Police by a unanimous vote of the Board of Supervisors at a public meeting

held in October of 2012.  (Id. at ¶ 17).  During his tenure, Plaintiff expressed disagreement with

Pine Township Supervisor Jason McCoy ("McCoy") over issues pertaining to the operation of

the police department, including the legality of using a traffic citation quota system as a means of

covering the cost of police salaries.  (Id. at ¶¶ 21-22).

Plaintiff was subsequently terminated from his job when the Pine Township Police Department was disbanded on October 31, 2012 at "a private Board commmittee meeting." (Id. at ¶¶ 18-19, 73). According to Plaintiff, Worthington Borough Mayor Keven Feeney ("Feeney") and Pine Township Supervisors McCoy and Clyde Moore ("Moore") met in a private session, upon the recommendation of Solicitor Bradley Hellion, to discuss Plaintiff's termination. (Id. at ¶ 100). Plaintiff was never subjected to discipline, provided with any statement of charges, or given an opportunity to be heard prior to his termination. (Id. at ¶¶ 21, 80-81). He claims that Feeney, McCoy and Moore violated provisions of the Pennsylvania Sunshine Law by failing to advise him ahead of time that his employment status would be discussed in executive session and by depriving him of an opportunity to demand that the matter be discussed publicly. (Id. at ¶¶ 100-02).

On November 1, 2012, Plaintiff went to the Pine Township Police Department to retrieve his belongings and return his police car, but he found that he could no longer access the building with his keys. (Id. at ¶¶ 24-25). After contacting McCoy, Plaintiff gained access to the building, where he was greeted by McCoy and Moore. (Id. at ¶¶ 25-27). Once inside, Plaintiff noticed that the locks had been cut or broken off of his own personal locker and a private locker owned by Pine Township Police Commander William Deforte. (Id. at ¶ 28). When Plaintiff asked McCoy and Moore who had cut the locks, they "chuckled" and indicated that "Mr. Feeney did it." (Id. at ¶ 29). According to Plaintiff, Moore stated that he and Feeney had broken into the Pine Township Police Department on October 30, 2012 and seized property. (Id. at ¶¶ 45-46). Plaintiff asked how Moore and Feeney could break into the police department and break off locks to personal lockers and private lock boxes without a warrant. (Id. at ¶ 43). According to Plaintiff, "Moore stated that they could do whatever they wanted, and it was performed upon the

'advice from Mr. Feeney.'" (Id. at ¶ 44). When Plaintiff attempted to retrieve certain items on behalf of Commander Deforte, Moore allegedly laughed and stated that the items were "now theirs." (Id. at ¶¶ 34-37).

During Plaintiff's encounter with Moore and McCoy on November 1, 2012, Moore confirmed that Plaintiff had been terminated from his position, stating, "[Y]our [*sic*] done, get your stuff outta' here." (Id. at ¶¶ 30-32). When Plaintiff asked why he had been terminated, Moore replied that "Mr. Feeney wanted it that way," and "we can't talk about that." (Id. at ¶ 41). Plaintiff inquired of Moore how he could terminate Plaintiff's employment and disband the police department wtihout a public hearing, to which Moore again replied, "[W]e can't talk about that with you." (Id. at ¶¶ 47-48).

According to Plaintiff, Feeney later admitted during an interview with Pennsylvania State Police that he had been present while Moore broke the locks on the lockers on October 30, 2012 and that he had "seized" property from the lockers. (Id. ¶¶ 50-51). Feeney again admitted to seizing property from the lockers during at a public meeting of the Worthington Borough Council that was held in November of 2012. (Id. at ¶¶ 52-53). Plaintiff claims that Moore and Feeney unlawfully seized "$550.00 USD, 1,000,00 [*sic*] rounds of .45 ACP ammunition, and several pairs of BDU uniform pants" from his personal locker. (Id. at ¶¶ 120-21). Plaintiff also claims that Feeney removed incriminating documents pertaining to an ongoing investigation that implicated Feeney's involvement in certain criminal activities. (Id. at ¶¶ 122-24). At the time of these events, neither Pine Township nor the Pine Township Police Department had a directive in place that allowed for periodic inspection of lockers. (Id. at ¶ 55). The lockers in question were purchased or personally owned by the officers, not the Township. (Id. at ¶¶ 56-57). Feeney was

not elected, appointed, or employed by, for, or within Pine Township, at any time relevant to this lawsuit. (Id. at ¶ 54).

Plaintiff subsequently filed this lawsuit on September 12, 2014 against Pine Township, Moore, the Borough of Worthington and Feeney (collectively, "Defendants"). His original complaint alleged:

1. a violation by Pine Township of Plaintiff's right to procedural due process with respect to the seizure of his belongings and the termination of his job, as well as his right to be free from unreasonable searches and seizures ("Count I");

2. conspiracy by all named Defendants to violate: (a) Plaintiff's right to procedural due process and the Pine Township Code relative to the loss of his job, (b) the Fourth Amendment with respect to the search of his locker and seizure of his belongings, and (c) Pennsylvania's Sunshine Law; and

3. Defendants' tortious interference with Plaintiff's business relations – *to wit,* his employment by Pine Township.

(Compl. (Doc. 1) ¶¶ 59-96).

After Defendants filed motions to dismiss the foregoing counts, this Court entered a Memorandum and Order (Doc. 30) dismissing certain claims. Specifically, the Court dismissed the following causes of action with prejudice: all of Plaintiff's Section 1983 claims as alleged against Moore and Feeney in their official capacities; Plaintiff's Section 1983 Fourteenth Amendment (Count I) claim for loss of property without due process of law; Plaintiff's Section 1983 Fourteenth Amendment (Count II) claim for conspiracy to deprive him of property without due process of law; and Plaintiff's Section 1983 claim alleging a violation of Pennsylvania's Sunshine Ace (Count II). (See Memorandum and Order of July 2, 2015 (Doc. 30) at p. 20). The Court dismissed the following claims without prejudice: Plaintiff's Section 1983 Fourteenth Amendment claim (Count I), to the extent that Plaintiff alleged a constitutional property interest in his job pursuant to statute or contract; Plaintiff's Section 1983 Fourth Amendment claim (Count I) against Pine Township; Plaintiff's Section 1983 Fourteenth Amendment conspiracy

claim (Count II), to the extent that Plaintiff alleges a constitutional property interest in his job pursuant to statute or contract; Plaintiff's Section 1983 Fourth Amendment conspiracy claim (Count II) as against Defendants Pine Township and/or the Borough of Worthington; and Plaintiff's claim for tortious interference with business relations (Count III). (Id. at p. 21).

Plaintiff subsequently filed his Amended Complaint (Doc. 32) – currently the operative pleading – in which he restates his claims in five separate counts. Count I now asserts a claim under 42 U.S.C. §1983 against Pine Township for the alleged violation of Plaintiff's procedural due process rights in connection with his termination and the warrantless seizure of his personal items on October 30, 2012. (Amended Compl. at ¶¶ 60-85). Count II asserts a Section 1983 claim against Pine Township for the alleged violation of Plaintiff's Fourth Amendment rights in connection with the warrantless seizure of his personal items on October 30, 2012. (Id. at ¶¶ 86-97). Count III asserts a claim against the individual defendants in their official and individual capacities for conpiracy to violate Plaintiff's procedural due process rights and provisions of the Pine Township Code. (Id. at ¶¶ 98-110). Count IV asserts a claim against all Defendants for tortious interference with Plaintiff's business relations. (Id. at ¶¶ 111-118). Count V (erroneously designated "Count VI" in the Amended Complaint) asserts a claim against all Defendants for the unlawful conversion of Plaintiff's property. (Id. at ¶¶ 119-126).

Defendants Moore and Pine Township (collectively, the "Township Defendants") move to dismiss Counts IV and V of the Amended Complaint, as well as Plaintiff's request for punitive damages, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (See Twp. Defs.' Mot. Dismiss (Doc. 33) at ¶¶ 13, 39-40). Defendants Feeney and the Borough of Worthington (collectively, the "Borough Defendants") move to dismiss Counts III through V pursuant to Rule 12(b)(6). (See Borough Defs.' Mot. Dismiss (Doc. 35) at p. 2). In addition, the Borough

Defendants move to strike certain allegations in the Amended Complaint pursuant to Rule 12(f). (Id.).

**ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Count III – Plaintiff v. The Individual Defendants

Count III of the Amended Complaint is captioned as a claim against "All Individual Defendants in their Official and Individual Capacities" for "Conspiracy to Violate the Plaintiff's Right to Procedural Due Process/Violation of Township Code." (Amended Compl. at Count III, p. 15). Although Plaintiff styles Count III as an alleged conspiracy to violate federal due process rights and provisions of the Township Code, it appears he is also asserting a conspiracy to violate his federal Fourth Amendment rights and/or provisions of Pennsylvania's Sunshine Law. (See, e.g., Amended Compl. at ¶ 100 (alleging that "[j]ust prior to [the Township's November 2012 public meeting], Pine Township Supervisor Clyde Moore, Pine Township Supervisor Jason McCoy, and Worthington Borough Mayor Kevin Feeney ... met in private session, violating the Pennsylvania Sunshine Law where ... Chief Airgood's termination was discussed." ); (id. at ¶ 108) (alleging that "Feeney conspired with Moore to break into private lockers within the Pine Township Police Department without warrant, and seize items, violating Plaintiff's 4th Amendment and 14th Amendment rights under the United States Constitution.").

The Borough Defendants move to dismiss all conspiracy claims against Feeney except for the Section 1983 claim asserted against Feeney in his individual capacity for alleged conspiracy to violate Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, which the Court previously found to be sufficiently pled.  Defendants argue that Plaintiff's conpiracy claim is barred by the "law of the case" doctrine to the extent it is premised on an alleged due process violation arising from the seizure of Plaintiff's personal belongings and/or an alleged violation of the Pennsylvania Sunshine Law.  Insofar as Count III is premised on an alleged federal civil rights conspiracy to deprive Plaintiff of his public employment without due process of law, the Borough Defendants argue that the claim remains insufficiently pled.  These arguments are well-taken.

The "law of the case" doctrine holds that, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  <u>See</u> <u>American Civil Liberties Union v. Mukasey</u>, 534 F.3d 181, 187 (3d Cir. 2008).  In its July 2, 2015 Memorandum and Order, this Court dismissed Plaintiff's Section 1983 conspiracy claim <u>with</u> prejudice to the extent the claim was based on:  (a) an alleged conspiracy to deprive Plaintiff of personal property located within his secured locker without due process of law or (b) an alleged conspiracy to violate Pennsylvania's Sunshine Law.  (<u>See</u> Mem. and Order dated 7/2/15 (Doc. 30) at pp. 12-13, 20).  That ruling stands and, as a result, Plaintiff cannot assert a federal civil rights conspiracy claim based on either of these two theories.[1]

---

[1] The Court further notes that it previously dismissed, with prejudice, all Section 1983 claims against Feeney and Moore in their official capacities, as such claims are duplicative of the municipal claims asserted against the Borough of Worthington and Pine Township.  (<u>See</u> Mem. and Order dated 7/2/15 (Doc. 30) at pp. 4, 20).  That ruling is the law of the case and, consequently, any official-capacity Section 1983 claims asserted by Plaintiff against Feeney or Moore in Count III are dismissed.

In his brief in opposition to the Borough Defendants' motion, Plaintiff concedes that he also cannot maintain a Section 1983 claim against Feeney for alleged conspiracy to deprive him of a protected property interest in his employment without due process of law, since "Mayor Kevin Feeney was not elected or appointed as head of the Pine Township Police Department." (Pl.'s Br. Opp. to Borough Defs.' Mot. Dismiss (Doc. 40) at p. 7). Accordingly, the Court will dismiss this particular claim against Feeney with prejudice, because it is not possible for Plaintiff to cure the pleading defect through further amendment.

The Borough Defendants have not moved to dismiss Plaintiff's Section 1983 claim against Feeney insofar as the claim is based on an alleged conspiracy to violate Plaintiff's Fourth Amendment rights by engaging in a warrantless search of his locker and a warrantless seizure of his personal belongings. Accordingly, that federal civil rights conspiracy claim remains pending against Feeney – in his individual capacity – and will proceed forward.

With respect to the claims against Moore in Count III, the Township Defendants have not challenged the substantive aspects of Plaintiff's federal conspiracy claim[2]; however, the Court's rulings with respect to Feeney have implications relative to the claims against Moore. First, under the law of the case, any Section 1983 conspiracy claims against Moore are dismissed with prejudice, to the extent they are premised on: (i) an alleged agreement to deprive Plaintiff of the personal property taken from his locker without due process of law; or (ii) an alleged agreement to violate provisions of the Pennsylvania Sunshine Law. Furthermore, no claim can be maintained against Moore under Section 1983 based on an alleged conspiracy to deprive Plaintiff of a constitutionally protected property interest in his job without due process of law, given Plaintiff's concession that he cannot maintain such a claim against Feeney. It is axiomatic that a

---

[2] The Township Defendants have formally moved only to strike Plaintiff's request for punitive damages in Count III, as discussed, infra.

conspiracy requires an agreement between at least two individuals.  See Parkway Garage Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993) ("To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'") (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970), overruled on other grounds, UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003); see also Gleason v. E. Norriton Twp., No. 11-CV-6273, 2012 WL 3024011, at *5 (E.D. Pa. July 24, 2012) (discussing Section 1983 conspiracy principles).  In both iterations of his complaint, Plaintiff alleged only that Moore conspired with Feeney.  (See Compl. at ¶¶ 77, 85-86; Amended Compl. at ¶¶ 99, 107-08).  Accordingly, Plaintiff's Section 1983 conspiracy claim pertaining to his alleged deprivation of due process in connection with his loss of employment is insufficient as a matter of law and will be dismissed with prejudice.

One final point remains to be discussed concerning Count III.  As noted, this Court previously dismissed, with prejudice, Plaintiff's Section 1983 claim to the extent it was based on an alleged conspiracy to violate provisions of the Pennsylvania Sunshine Law, and this ruling remains the law of the case.  Although Plaintiff does not dispute this point, he does appear to be arguing that Count III actually incorporates a pendant state law claim for conspiracy to violate the Pennsylvania Sunshine Law.  (See Pl.'s Br. Opp. to Borough Defs.' Mot. Dismiss (Doc. 40) at p. 8 (noting that, "[t]hough this is a violation of a law of [the] Commonwealth of Pennsylvania, the Court may hear state cases accompanied by Federal issue[s].")).

To the extent Plaintiff intended to assert a state law conspiracy claim in Count III of his Amended Complaint, his pleading failed to give Defendants proper notice of this claim, contrary to the mandates of Rules 8(a) and 10(b).  See Fed. R. Civ. P. 8(a) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief); Fed. R. Civ.

P. 10(b) (stating that each claim founded on a separate transaction or occurrence should be stated in a separate count, where doing so would promote clarity); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests") (citations omitted); Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (noting that, where a plaintiff asserts multiple claims for relief, the complaint should "present each claim for relief in a separate count, as required by Rule 10(b), [ ] and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading.") (internal footnote omitted).  In addressing Count II of the original complaint, this Court clearly interpreted and analyzed the alleged conspiracy claim as a federal cause of action that was being asserted under Section 1983.  (See Mem. and Order dated 7/2/15 at 13).  This was consistent with the fact that Count II purported to assert additional conspiracies to violate Plaintiff's federal rights under the Fourth and Fourteenth Amendments.  Further compounding the confusion is the fact that the factual content of amended Count III is essentially identical to that previously set forth in Count II of the original complaint, particularly as it relates to alleged violations of the Pennsylvania Sunshine Law.  Nevertheless, instead of setting forth his putative state law conspiracy claim in a separate count as contemplated by Rule 10(b) and/or adding new averments to clarify the nature of his claim, Plaintiff simply argues that his conpiracy claim in amended Count III now incorporates a pendant state law claim not previously asserted.  As pled, the Amended Complaint fails to give adequate notice that Plaintiff is asserting a state law conspiracy theory based on an agreement to violate provisions of the Pennsylvania Sunshine Law.

Even if we construe Count III as giving adequate notice of such a claim, however, the claim is insufficient as a matter of law and must be dismissed. Under Pennsylvania law, "[t]wo or more persons commit the tort of civil conspiracy where they (1) agree or combine (2) to do an unlawful act or a lawful act by unlawful means (3) with malice, 'i.e., an intent to injure.'" Deritis v. Roger, No. CV 13-6212, 2016 WL 739015, at *8 (E.D. Pa. Feb. 24, 2016) (quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979)).

Here, the only "persons" who are alleged to have formed an agreement are Feeney and Moore. (See, e.g., Amended Compl. at ¶ 99 ("Feeney and Moore unlawfully conspired to violate Chief Airgood's constitutional rights to procedural due process of law); id. at ¶ 107 (alleging that Feeney "encouraged, aided, abetted, and conspired with the other Defendants"); id. at ¶ 108 (alleging that "Feeney conspired with Moore" to break into private lockers within the Pine Township Police Department without [a] warrant, and seize items...")). However, Plaintiff's averments fail to allege a plausible conspiracy by Feeney and Moore to violate provisions of the Pennsylvania Sunshine Law. The Amended Complaint states only that "[j]ust prior to being terminated at the public monthly Pine Township meeting in November of 2012, Pine Township Supervisor Clyde Moore, Pine Township Supervisor Jason McCoy, and Worthington Borough Mayor Kevin Feeney, and upon recommendation of Solicitor Bradley Hellion, met in private session, violating the Pennsylvania Sunshine Law where it is believed, and therefore averred, that Chief Airgood's termination was discussed." (Amended Compl. at ¶ 100). Plaintiff avers that, contrary to Section 708 of the Sunshine Law, he was never advised that his employment status would be discussed in executive session, nor was he given a chance to demand that it be discussed in public. (Id. at ¶¶ 101-02). No averments are offered concerning the alleged conspiracy other than a conclusory allegation that "Mayor Feeney[ ] encouraged, aided, abetted,

and conspired with the other Defendants, and is liable because he unlawfully conspired with the other Defendants and acted under color of state law." (Id. at ¶ 107).

Under federal pleading standards, this is insufficient to establish a plausible claim for civil conspiracy. As a general matter, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in the original; citations omitted). To successfully plead a civil conspiracy claim, a plaintiff must set forth allegations that are:

> supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

Angino v. Wells Fargo Bank, N.A., No. 1:15-CV-418, 2016 WL 787652, at *12 (M.D. Pa. Feb. 19, 2016) report and recommendation adopted, No. 1:15-CV-418, 2016 WL 759161 (M.D. Pa. Feb. 26, 2016) (quoting Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992)). The Amended Complaint is devoid of factual content that indicates, e.g., the alleged objectives of the "conspiracy" and/or the roles that Feeney or Moore played.

More fundamentally, Plaintiff's own averments demonstrate that Feeney could not have conspired with Moore to violate the provisions of the Sunshine Law as it pertains to decisions about Plaintiff's employment, since Plaintiff concedes that Feeney, as Mayor of the Borough of Worthington, was not formally affiliated with the Township in any capacity. (See Amended Compl. ¶ 54 (alleging that "Worthington Borough Mayor Kevin Feeney[] was not elected, appointed, or employed by, for or within the Township of Pine, in any capacity); Pl.'s Br. Opp. to Borough Defs.' Mot. Dismiss (40) at p. 7 (conceding the dismissal of "the claim for

conspiracy against Mayor Kevin Feeney with regard to alleged deprivation of [Plaintiff's] property interest in employment with Pine Township" because "Feeney was not elected or appointed as head of the Pine Township Police Department")). Because Feeney was not a Pine Township official and could not have conspired with Moore to violate provisions of the Pennsylvania Sunshine Act relative to decisions about Plaintiff's employment, it follows that Plaintiff cannot sustain a state law conspiracy claim against Moore, either. See Deritis, 2016 WL 739015, at *8 (Pennsylvania law requires an agreement between "two or more persons" to do an unlawful act or a lawful act by unlawful means, with malice). Accordingly, to the extent Count III purports to state a claim under Pennsylvania law for an alleged conspiracy to violate provisions of the Sunshine Law, that claim is insufficiently pled in a manner that is not capable of being cured through further amendment.

In light of the foregoing, Count III of the Amended Complaint presently survives only to the extent that it asserts a Section 1983 claim against Moore and Feeney in their individual capacities based on an alleged conspiracy between these two Defendants to violate Plaintiff's Fourth Amendment rights. Plaintiff's Section 1983 "due process" conspiracy claim relative to his loss of employment, and his putative state law claim for alleged conspiracy to violate the Pennsylvania Sunshine Law will be dismissed with prejudice.

Count IV – Plaintiff v. All Defendants

Count IV of the Amended Complaint is styled as a claim against "All Defendants in Their Official and Individual Capacities" for "Tortuous [*sic*] Interference with Business Relations." (Amended Compl. at Count IV, p. 17). Plaintiff agrees that, pursuant to Pennsylvania's Political Subdivision Tort Claim Act ("PSTCA"), local agencies such as Pine Township and the Borough of Worthington are immune from liability in tort, except in limited

situations which do not apply here.  See 42 Pa.Cons. Stat. Ann. §§ 8541-8542 (West).  This

immunity extends to intentional tort claims.  See Robinson v. Darby Borough, No. 08-4561,

2010 WL 1462370, at *2 (E.D. Pa. Apr. 13, 2010).[3]  Plaintiff further concedes that Feeney and

Moore are similarly immune from liablity under Count IV relative to any claims being asserted

against them in their official capacities.  (See Pl.'s Br. in Opp. to Mot. to Partially Dismiss the

Amended Compl. (Doc. 39) at p. 8).  See also Dix v. City of Phila., No. CIV.A. 15-532, 2015

WL 4624248, at *4 (E.D. Pa. Aug. 3, 2015) ("The PSTCA provides that Pennsylvania municipal

agencies[ ] and their officers acting in their official capacities are immune from liability for

damages arising out of injuries to persons or property.") (citing authority); Holloway v. Brechtse,

279 F. Supp. 2d 613 (E.D. Pa. 2003) (under the PSTCA, municipal agencies' immunity from

liability on state law tort claims extends to municipal offers acting in their official capacities).

Accordingly, to the extent Count IV purports to assert claims against Pine Township, the

Borough of Worthington and/or Feeney or Moore in their official capacities, those claims are

dismissed with prejudice.[4]

     To the extent Count IV is asserted against Feeney and Moore in their personal capacities,

Defendants argue that dismissal is still appropriate because Count IV does not allege the

existence of any contractual relationship with which the Defendants could have interfered.  To

state a cause of action under Pennsylvania law for intentional interference with contractual

relations, a plaintiff must prove: (1) the existence of a contractual, or prospective contractual

---

[3] The Borough Defendants also move to dismiss Plaintiff's claim for punitive damages in Counts
IV and V of the Amended Complaint on the ground that, pursuant to the PSTCA, a local agency
cannot be held liable for punitive damages.  Plaintiff concedes this argument and, consequently,
his claim for punitive damages would be independently subject to dismissal on this basis as well.

[4] In fact, this issue was previously decided by the Court in its July 2, 2015 Memorandum and
Order.  See Mem. and Order of 7/2/15 (Doc. 30) at 18 (noting that, pursuant to the PSTCA, "the
claim of tortious interference with business relations cannot proceed against Pine Township or
the Borough of Worthington, and it will be dismissed").

relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing or prospective relation; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. Kepner v. Kepner, No. 835 EDA 2015, 2015 WL 7283034, at *4 (Pa. Super. Ct. Nov. 18, 2015). While Defendants challenge the first element of Plaintiff's claim – i.e., the existence of a contractual relationship – Plaintiff contends that this element is satisfied because he has pled the existence of a verbal employment contract with Pine Township.

Under Pennsylvania law, the formation of a contract requires (1) the parties' manifestation of a mutual intention to be bound by an agreement; (2) terms that are sufficiently definite so as to be enforceable; and (3) consideration. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 533 (3d Cir. 2009) (citations omitted). "'[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain.'" Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 585–87 (3d Cir. 2009) (quoting Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 666 (Pa. 1956)). "In other words, we look to see whether 'the terms are sufficiently definite to be specifically enforced.'" Id. (quoting Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298–99 (3d Cir.1986)).

Here, Plaintiff alleges that he was hired in or around September 2012 to serve as a member of the Pine Township Police Department. (Amended Compl. at ¶ 11). He was informed by McCoy that his "starting salary" woud be $15 per hour. Id. at ¶ 16. At the Board of Supervisors' public meeting in October 2012, Plaintiff was promoted to Chief of Police by a unanimous vote of the Board. (Id. at ¶ 17). His responsibilities included being "in charge of

everything from the police department's daily administrative duties to the not so routine under-cover police drug work, which required [him] to be on call any and all times." (<u>Id.</u> at ¶ 69). According to Plaintiff, McCoy informed him that one of his responsibilites would be "to constantly monitor the township's illegal drug activity, 'through whatever means necessary,'" and "to be available '24 hours a day, seven days a week,' in order to put an end to the illegal drug problem within Pine Township." (<u>Id.</u> at ¶ 70). Plaintiff was never subject to any probationary period during his tenure with the police department. (<u>Id.</u> at ¶¶ 71-72). These allegations are sufficient to establish a plausible inference of a contractual agreement between Plaintiff and Pine Township that Plaintiff would serve as a member of the Township's police force, and later, its police chief, in exchange for remuneration by the Township.

Nevertheless, this does not end our inquiry because "[i]t is widely held that Pennsylvania law does not recognize a claim for tortious interference with an employment contract that is an at-will arrangement." <u>Mifflinburg Tel., Inc. v. Criswell</u>, 80 F. Supp. 3d 566, 570 (M.D. Pa. 2015). This raises the question of what the terms of Plaintiff's employment contract were. In Pennsylvania, municipal employees are presumed to be at-will employees. <u>See</u> <u>Stumpp v. Stroudsburg Municipal Authority</u>, 658 A.2d 333 (Pa. 1995) (noting that, "as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason"); <u>Ballas v. City of Reading</u>, No. CIV.A.00-CV-2943, 2001 WL 73737, at *3 (E.D. Pa. Jan. 25, 2001) ("Municipal employees ... assume their job subject to the possibility of summary removal by the employing authority for any reason or no reason.") (citations omitted).

Notwithstanding this presumption, Plaintiff appears to assert that he entered into an implied, "long term" employment contract with Pine Township. (<u>See</u> Pl.'s Br. Opp. to Township Defs.' Mot. Dismiss (Doc. 39) at p. 6). Plaintiff's argument is based on the theory that one of his

responsibilities as Chief of Police was to address the "ongoing drug problem in Pine Township," and "[s]ince drug activity is a deep rooted problem within a municipality, Chief Airgood could not have solved this problem within a short period of time." (Id.). Plaintiff therefore reasons that "[t]his intent to solve a community drug problem[ ] clearly shows intent for a long term contractual agreement between Chief Airgood and the Township of Pine." (Id.). As Defendants point out, Plaintiff argues that he entered into a "long term contractual agreement" with Pine Township, but he has not pled facts to establish such an agreement. It is well established, that pleadings cannot be amended by way of arguments set forth in a brief. See Pennsylvania ex rel. Zimmerman v. Pepsico, 836 F.2d 173 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); Cuoco v. Palisades Collection, L.L.C., No. CV 13-6592 (ILL), 2015 WL 5823054, at *4 (D.N.J. Oct. 1, 2015) (plaintiff's argument in reply brief could not be read to add a claim to his proposed amended complaint, "as parties cannot amend pleadings through briefing"). Moreover, Pine Township, as a second-class township, cannot enter into "long term" employment contracts absent express legislative authority to do so. See Ballas v. City Of Reading, No. CIV.A.00-CV-2943, 2001 WL 73737, at *3 (E.D. Pa. Jan. 25, 2001) ("Where a state agency or municipality contracts for tenured employment in the absence of enabling legislation, the contract is invalid and unenforceable.") (citation omitted); Stumpp, 658 A.2d at 334 ("[T]he Authority simply does not have the power under law to enter into contracts of employment that contract away the right of summary dismissal, since the power to confer tenure must be expressly set forth in the enabling legislation."). As written, the Amended Complaint does not establish a plausible implied, "long term" employment contract arising from Plaintiff's responsibilities to address illegal drug activity within the Township.

On the other hand, Plaintiff has plausibly alleged that he was a "regular full-time" employee covered by the Police Tenure Act, 53 Pa. Cons. Stat. §§ 812, 66912 (West). See also Perrett v. Harmar Twp., Civil Action No. 07-593, 2008 WL 3457014, at *9 (W.D. Pa. 2008) ("The Second Class Township Code at 53 P.S. § 66912 adopts the provisions of the Police Tenure Act with regard to the removal of police officers.").[5] "Section 2 of the Act sets forth the only circumstances under which a full-time police officer [of a Township of the Second Class] may be removed from office." Siegfried v. Unemployment Comp. Bd. of Review, No. 1632 C.D. 2013, 2014 WL 3943990, at *2 (Pa. Commw. Ct. Aug. 13, 2014) (citing Upper Makefield Township v. Pennsylvania Labor Relations Board, 753 A.2d 803, 807 (Pa. 2000)). These include situations where an officer: (1) suffers from a "physical or mental disability" that affects his or her ability to continue in service, (2) commits "neglect or violation of any official duty"; (3) commits a violation of law that amounts to a misdemeanor or felony; (4) demonstrates "inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer"; or (5) is intoxicated while on duty. 53 Pa. Stat. Ann. § 812 (West). Pennsylvania courts have stated, in the context of unemployment compensation cases, that the provisions of the Police Tenure Act are incorporated as implied terms into the officer's employment contract. See Siegfried, 2014 WL 3943990, at *2 ("As a matter of law, the Police Tenure Act is incorporated into Claimant's employment contract with Employer and supplies implied terms and bases for termination apart from those detailed in the Regulations.") (citing DePaul v. Kauffman, 272 A.2d 500, 506 (Pa.1971) ("[T]he laws in force when a contract is entered into become part of the

---

[5] Defendants implicitly acknowledge this fact, as they have not moved to dismiss Count I of the Amended Complaint, which asserts a Section 1983 procedural due process claim premised on the theory that Plaintiff was deprived of a constitutionally protected property interest in his employment (property interest in which arose from the provisions of the Police Tenure Act) without due process of law. (See Amended Compl. at ¶¶ 64, 66).

obligation of contract with the same effect as if expressly incorporated in its terms.")). Thus, even if Plaintiff's employment status with Pine Township would have otherwise been at-will, the provisions of the Police Tenure Act became implied terms of his employment with the Township, if Plaintiff is indeed covered by the Act as he plausibly alleges at this stage of litigation.

For present purposes, Plaintiff has sufficiently alleged the existence of a contractual relationship with Pine Township. Feeney claims, however, that there are no allegations in the Amended Complaint to show that he personally engaged in conduct that caused Pine Township to terminate Plaintiff's employment and that the Township would not have discharged him and/or disbanded its police department in the absence of Feeney's alleged interference. The only factual allegation along these lines is Moore's vague reference to the fact that Plaintiff was terminated because Feeney "wanted it that way." (Amended Compl. at ¶ 41). Although not elaborate, the Court finds this allegation sufficient to permit a plausible inference that Feeney was instrumental in bringing about Plaintiff's termination. While the viability of Plaintiff's theory will have to be tested on a more fully developed record, he has, at this early stage, alleged sufficient factual content to raise a reasonable expectation that discovery will lead to evidence supportive of his tortious interference claim. See Twombly, 550 U.S. at 563 n. 8.

Alternatively, Feeney claims that he is protected from liability under the PSTCA because there has been no averment of "willful misconduct" on his part. The PSTCA does not shield an employee from liability where his conduct constitutes a "crime, actual fraud, actual malice, or willful misconduct." Dix, 2015 WL 4624248, at *4 (citing 42 Pa. Cons.Stat. § 8550; Kuzel v. Krause, 658 A.2d 856 (Pa. Commw. Ct. 1995)). "The term 'willful misconduct' is synonymous with the term 'intentional tort.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir.2006); see Dix,

2015 WL 4624248, at *4.  Simply put, Plaintiff's averment that Feeney and Moore, acting in their individual capacities, intentionally interfered with his business relationship with Town Pineship satisfies the "willfulness" standard, as it alleges the Defendants' involvement in an intentional tort.  See Dix, 2015 WL 4624248, at *4 (defendant officers were not immune, in their individual capacities, from liability for alleged conversion pursuant to the PSTCA, since conversion is an intentional tort).  To the extent the "willful misconduct" standard is disputed, it will have to be resolved at a later stage of this litigation with the benefit of discovery.  See C.B. v. Western Wayne Sch. Dist., Civil Action No. 3:15-CV-1126, --- F. Supp. 3d ---, 2016 WL 727745, at *12 (M.D. Pa. Feb. 24, 2016) (stating that "willful misconduct" under the PSTCA, 42 Pa. Cons. Stat. Ann. §8550 (West), is a "'question to be determined by the trier of fact'" and, therefore, "more appropriate to determine at the summary judgment [stage]") (quoting Acker v. Spangler, 500 A.2d 206, 207 (Pa. Commw. Ct. 1985)).  As such, Defendants' Motions to Dismiss Count IV of the Amended Complaint will be denied.

Count V – Plaintiff v. All Defendants

Count V of the Amended Complaint is styled as a claim against "All Defendants in Their Official and Individual Capacities" for alleged conversion.  (Amended Compl. at Count V, p. 18).  Because Plaintiff agrees that Pine Township and the Borough of Worthington are immune from any liability for conversion under the PSTCA, his claims against those entities will be dismissed with prejudice.  (See Br. Supp. Borough Defs.' Mot. Dismiss (Doc. 36) at p. 10-11; Br. Opp. to Twp. Defs.' Mot. Dismiss (Doc. 39)).  Plaintiff similarly concedes that immunity under the PSTCA is extended to Feeney and Moore in their official capacities, so his "official capacity" claims for alleged conversion will be dismissed with prejudice as well.  Id.

With regard to Plaintiff's claims against Feeney and Moore in their individual capacities, Feeney argues that Plaintiff's conversion claim is untimely.  Under the "Third Circuit Rule," a defendant may assert a statute-of-limitations defense by way of a motion to dismiss "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation marks and citation omitted).  The untimeliness of the plaintiff's claim must be apparent from the face of the pleading.  Cannella v. Brennan, Civil Action No. 2:12–CV–1247, 2014 WL 3855331, at *10 (E.D.Pa. Aug.6, 2014).

In this case, the Amended Complaint clearly asserts that Plaintiff's personal items were wrongly converted by Feeney and Moore on October 30, 2012, and Plaintiff discovered this fact two days later, on November 1, 2012.  See Amended Compl. at ¶¶ 24-29, 43-46, 120-26. Plaintiff's claim accrued, and the statute of limitations began to run, when he discovered his injury.  See Raucci v. Candy & Toy Factory, No. CV 15-3385, 2015 WL 6664160, at *2 (E.D. Pa. Nov. 2, 2015).  Because Pennsylvania imposes a two-year statute of limitations on claims for conversion, see 42 Pa. Cons. Stat. Ann. § 5524(3) (West), Plaintiff had to file suit on his conversion claim no later than November 1, 2014.  Plaintiff did not assert his conversion claim until July 13, 2015 when he filed the Amended Complaint, so, at first blush, it would appear that Plaintiff's conversion claim is time-barred.

Nevertheless, in the interests of justice, the Court will not dismiss the conversion claim on statute of limitations grounds because it appears that the claim relates back to Plaintiff's original complaint.  Pursuant to Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out ... in the original pleading."  See Fed. R. Civ. P.

15(c)(1)(B).  Here, Plaintiff's original complaint asserted Section 1983 claims under the theory that his Fourth and Fourteenth Amendment rights were violated when Moore and Feeney broke into his locker and seized his personal belongings.  These claims were based on the very same facts that now form the basis of Plaintiff's conversion claim.  (See Compl. (Doc. 1) at ¶¶ 23-28, 42-45, 49-52, 61-66, 72-75).  Although the legal theory in Count V of the Amended Complaint is different from the theory that originally was asserted in Count I of the Complaint, "[c]ourts . . . allow relation back when the new claim is based on the same facts as the original pleading and only changes the legal theory."  3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.19[2] (3d ed. 2011); see also Roseberry v. City of Phila., No. CV 14-2814, 2016 WL 826825, at *8 (E.D. Pa. Mar. 3, 2016) (plaintiff's First Amendment retaliation claim in amended pleading "clearly relate[d] back to the origination of the lawsuit," where it was based on the identical conduct that formed the basis of plaintiff's employment discrimination claims in the original complaint); 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1497 (3d ed. 2010) ("The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.").  Because Plaintiff's conversion claim appears to relate back to his prior Section 1983 claims, which were timely filed,[6] the Court will not dismiss the conversion claim on statute-of-limitations grounds.

We next consider the Township Defendants' argument that Moore cannot be liable for conversion because there is no allegation in the Amended Complaint that he engaged in wrongful conduct.  "Conversion is 'an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession.'"  Dix,

---

[6] The original complaint was filed on September 12, 2014, prior to the expiration of the statute of limitations for the conversion claim.

2015 WL 4624248, at *5 (quoting <u>Norriton E. Realty Corp. v. CentralPenn Nat'l Bank</u>, 254 A.2d

637, 638 (Pa.1969)).  According to Defendants, an essential element of a conversion claim is the

defendant's wrongful exercise of "dominion or control over the chattel," which can take any of

the following forms:  "(a) Acquiring possession of the goods; (b) Transferring the goods in a

manner which deprives the owner of control; (c) Withholding possession from one who has the

right to it; and (d) Damaging or misusing the chattel."  (Br. Supp. Twp. Defs.' Mot. Dismiss

(Doc. 34) at 6 (quoting <u>McMunn v. Uppermann</u>, 83 Pa. D&D 4th 103 (Lawrence Cty. 2006))).

Defendants argue that Moore cannot be liable for conversion, given Plaintiff's allegations that

Moore merely opened the lockers, while Feeney removed documents from Plaintiff's personal

locker that were allegedly incriminating as to Feeney.  (<u>See</u> <u>id.</u> at p. 6 (citing Amended Compl. at

¶ 122)).

      Assuming that Defendants' recitation of the governing legal principles is accurate, the

Court finds that Plaintiff has stated a plausible claim of conversion against Moore.  The

Amended Complaint clearly permits an inference that Moore and Feeney jointly broke into the

Township's Police Department and jointly seized items on October 30, 2012.  (<u>See</u> Amended

Compl. at ¶¶ 43-44, 46).  While the Amended Complaint alleges that only Feeney took

documents from Plaintiff's locker, (<u>id</u>. at ¶¶ 122-24), it also alleges that both Moore and Feeney

dispossessed Plaintiff of currency, ammunition, and "several pairs of BDU uniform pants."  (<u>See</u>

<u>id.</u> at ¶¶ 120-21).  Thus, the Amended Complaint gives rise to a plausible inference that Moore

wrongfully exercised dominion and control over Plaintiff's belongings.  Even if Moore did

nothing more than cut the locks so that Feeney could seize the property in question, this could

plausibly establish that Moore "transferr[ed] the goods in a manner which deprive[d] the owner

of control."

Accordingly, Plaintiff has sufficiently pled a cause of action against Moore for conversion. To the extent Moore disputes his dominion or control over Plaintiff's personal belongings, this factual issue will have to be resolved at a later stage of the litigation, following discovery. Defendants' Motions to Dismiss Plaintiff's conversion claim as against Moore and Feeney in their individual capacities will be denied.

Punitive Damages Under Section 1983

The Township Defendants move to dismiss any request by Plaintiff, in connection with his Section 1983 claims, for punitive damages against either the Township or Moore in his official capacity. Defendants are correct that punitive damages are not available under Section 1983 as against municipalities or their employees, to the extent the employees are sued in their official capacities. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (punitive damages may not be recovered against a municipality under § 1983); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (suits against individual defendants in their official capacities are equivalent to suits against the municipalities that employed them); see also Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) ("Punitive damages cannot be recovered from defendants in their official capacities."); Judge v. Shikellamy Sch. Dist., No. 4:15-CV-0551, 2015 WL 5697220, at *10 (M.D. Pa. Sept. 28, 2015) (noting that "neither municipalities nor defendants sued in their official capacities can be liable for punitive damages"). The Court will grant Defendants' motion to dismiss insofar as it relates to Plaintiff's request, under Counts I and II of the Amended Complaint, for punitive damages against the Township.[7]

---

[7] The Court has dismissed all official capacity claims that Plaintiff might be asserting under §1983, so no punitive damages can be awarded against Moore in his official capacity in any event. See Mem. and Order dated 7/2/15 at p.4; discussion, supra, at n. 1.

Moore also argues that no punitive damages may be recovered against him in his individual capacity relative to Plaintiff's Section 1983 claim. "[P]unitive damages against individual defendants in their individual capacities are available where the defendants have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'" Ramsier v. Allegheny Cty., No. CV 15 - 539, 2016 WL 890603, at *9 (W.D. Pa. Mar. 9, 2016) (quoting Bennis v. Gable, 823 F.2d 723, 734 (3d Cir.1987)); see also Smith v. Wade, 461 U.S. 30, 56 (1983). Here, Plaintiff has alleged conduct which, if proven, could give rise to a reasonable inference that Moore acted with reckless or callous disregard of Plaintiff's Fourth Amendment rights. Accordingly, the viability of Plaintiff's punitive damages claim against Moore is an issue that must await resolution at a later stage. The Court will deny the Township Defendants' motion insofar as Plaintiff seeks punitive damages against Moore personally in Count III.

Motion to Strike

The Borough Defendants have moved to strike Paragraphs 88, 89, 122, 123, and 124 of the Amended Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. The averments in question concern allegations that Feeney was the subject of an ongoing criminal investigation. Defendants contend that these averments are untrue, impertinent to Plaintiff's claims and scandalous in nature.

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts have "'considerable discretion in disposing of a motion to strike under Rule 12(f).'" Cottillion v. United Ref. Co., No. CIV.A. 09-140, 2014 WL 1207527, at *3 (W.D. Pa. Mar. 24, 2014)(quoting Dela Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007)).

As a general matter, however, motions to strike are disfavored, <u>United States v. 0.28 Acre of Land, More or Less, Situate in Washington Cty., Penn.</u>, No. 09CV0583, 2009 WL 4408194, at *2 (W.D. Pa. Nov. 25, 2009) (citation omitted), and should be granted "only when 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" <u>Allied Dental Grp., Ltd. v. State Farm Fire & Cas. Co.</u>, No. CIV.A. 12-1637, 2013 WL 5436948, at *3 (W.D. Pa. Sept. 27, 2013) (quoting <u>Medevac MidAtlantic v. Keystone Mercy Health Plan</u>, 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011)). "Indeed, striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." <u>Spiess v. Pocono Mountain Reg'l Police Dep't</u>, No. 3:10CV287, 2011 WL 662977, at *1 (M.D. Pa. Feb. 14, 2011) (citation and internal quotation marks omitted).

In light of the generally disfavored status of motions to strike, the Borough Defendants' motion to strike will be denied. The Court finds that the challenged averments are arguably relevant insofar as they demonstrate a motive for Feeney's alleged misappropriation of certain items belonging to Plaintiff. To the extent the challenged allegations are potentially prejudicial and/or likely to confuse a fact-finder, the Court will have the ability to address these concerns through appropriate pretrial orders and/or careful jury selection, if the action proceeds to that stage.

## II.    ORDER

For the reasons stated above, the Motion to Partially Dismiss Amended Complaint filed by Defendants Township of Pine and Clyde Moore (Doc. 33) is **GRANTED IN PART and DENIED IN PART.** The motion (Doc. 33) is DENIED insofar as it seeks dismissal of:

(a) Plaintiff's request for punitive damages against Moore in his individual capacity, as set forth

in Count III of the Amended Complaint; (b) Plaintiff's claim against Moore, in his individual capacity, for alleged tortious interference with business relations, as set forth in Count IV of the Amended Complaint; and (c) Plaintiff's claim against Moore, in his individual capacity, for alleged conversion, as set forth in Count V of the Amended Complaint.  In all other respects, the motion (Doc. 33) is GRANTED.

The Motion of Defendants Worthington Borough and Kevin Feeney to Partially Dismiss Plaintiff's Amended Complaint and Motion to Strike Portions of the Amended Complaint (Doc. 35) is **GRANTED IN PART and DENIED IN PART.**  The motion to dismiss (Doc. 35) is DENIED insofar as it seeks dismissal of:  (a) Plaintiff's claim against Feeney, in his individual capacity, for alleged tortious interference with business relations, as set forth in Count IV of the Amended Complaint; and (b) Plaintiff's claim against Feeney, in his individual capacity, for alleged conversion, as set forth in Count V of the Amended Complaint.  In all other respects, the motion to dismiss (Doc. 35) is GRANTED.  The Defendants' motion to strike portions of the Amended Complaint (Doc. 35) is DENIED.

Consistent with the foregoing, the following claims are hereby **DISMISSED WITH PREJUDICE:**  Plaintiff's claims under 42 U.S.C. §1983 for punitive damages against the Township of Pine (Counts I and II); Plaintiff's Section 1983 claims against Defendants Clyde Moore and/or Kevin Feeney in their official capacities (Count III); Plaintiff's Section 1983 claim for conspiracy to deprive him of personal property taken from his private locker, without due process of law (Count III); Plaintiff's Section 1983 claims for conspiracy to violate provisions of the Pennsylvania Sunshine Law (Count III); Plaintiff's Section 1983 claim for conspiracy to deprive him of a protected property interest in his job, without due process of law (Count III); Plaintiff's claim under Pennsylvania law for conspiracy to violate provisions of the Pennsylvania

Sunshine Law (Count III); Plaintiff's claims against the Borough of Worthington and the Township of Pine for tortious interference with a business relation (Count IV); Plaintiff's claims against the Borough of Worthington[8] and the Township of Pine for conversion (Count V); Plaintiff's claims against Defendants Moore and Feeney, in their official capacities, for tortious interference with a business relation (Count IV); and Plaintiff's claims against Defendants Moore and Feeney, in their official capacities, for conversion (Count V).

      IT IS SO ORDERED.


March 30, 2016                                          s\Cathy Bissoon     
                                                                Cathy Bissoon
                                                                United States District Judge

CC (via ECF email notification):

All Counsel of Record

---

[8] Because no remaining or anticipated claims exist as against the Borough of Worthington, it shall be terminated as a party to this case.